**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| RADIANSE, INC.,<br><br>Plaintiff,<br><br>         v.<br><br>TWIN CITY FIRE INSURANCE COMPANY,<br><br>Defendant. | CIVIL ACTION NO. 10-10120-RGS |

**TWIN CITY FIRE INSURANCE COMPANY'S OPPOSITION**
**TO RADIANSE'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Defendant Twin City Fire Insurance Company ("Twin City") submits this Memorandum in Opposition to Plaintiff Radianse, Inc.'s ("Radianse") Motion for Partial Summary Judgment.

**Summary of Twin City's Argument**

Twin City agrees with Radianse that whether Twin City had any duty to defend or indemnify Radianse for the Underlying Action is a matter of law appropriate for summary judgment.[1]   As set forth in Twin City's Memorandum of Law in support of its Motion for Summary Judgment (the "Twin City Motion"), the Underlying Action is unambiguously excluded from coverage under Section V.(A)(1) of the Policy.  Twin City Motion, Ex. E (the "Exclusion").  The Exclusion consists of two clauses: (i) a declaration that broadly excludes "any claim" that is "in any way related," "to any liability under," "any contract or agreement;" and (ii) a "carve back" that substantially limits the reach of the exclusion by making it inapplicable

---

[1] Twin City maintains that Radianse's claims for bad faith can also be disposed of as a matter of law, regardless of the outcome of Radianse's other claims.  Twin City's denial of coverage was, at the very least, reasonable and in good faith.  There is simply no potential for bad faith in this case.  *See* Twin City Motion, at 15-16.

"to the extent that liability would have been incurred in the absence of such contract or agreement."[2]

In the Underlying Action, AccountAbility sued its former employee, Diane Marcou, for breach of her employment contract and sued Radianse for inducing that breach.  Thus, the claims in the Underlying Action arose from or were in some way related to liability under a contract; specifically, Marcou's employment contract.  Moreover, because no liability could have been incurred without Marcou's employment contract, the "carve back" to the Exclusion does not apply.

Radianse argues that the Exclusion does not apply for various reasons.  This memorandum will address each of these reasons in turn below.

## I. AccountAbility's Claims Against Radianse Arose From Liability Under A Contract

Radianse first argues that the Underlying Action did not involve "liability under" a contract, but rather "damage to property" (apparently under the mistaken belief that its D&O policy is a general liability policy that covers "property damage").  *See* Radianse Motion, at pp. 8-9.  Radianse's logic is as follows: 1) AccountAbility's contractual right (to insist that Marcou not work for its clients) was a "property interest"; 2) Radianse, by inducing a violation of that interest, allegedly "damaged" AccountAbility's "property"; 3) and therefore, AccountAbility's claims involved "damage to property" and not contractual liability.

For the proposition that a contractual right is a property interest, Radianse cites the unpublished case of *United States v. Roxse Homes, Inc.*, 1993 WL 100102 (D. Mass. Mar. 29, 1993).  *Roxse Homes* involved foreclosure on a real estate development.  A previous court order

---

[2] The full text of the Exclusion reads: "(A) The insurer shall not pay Loss under Insuring Agreement (C) for any Claim: (1) based upon, arising from, or in any way related to any liability under any contract or agreement, provided that this exclusion shall not apply to the extent that liability would have been incurred in the absence of such contract or agreement; . . ."

had placed all "property" of the development in the possession of the Department of Housing and Urban Development, as guarantor of the mortgage.  At issue in the case was whether the development's breach of contract claim against the roofing contractor constituted "property" for the purposes of the order.  The court answered this question in the affirmative.

The court did not rule that the breach of contract claim against the contractor was somehow *not* contractual.  The court did not rule that the claim constituted "property" *as opposed to* a contractual right.  Rather, the court simply held that the development's claim for breach of contract was included among its "property" for the purposes of the court order.  Furthermore, *Roxse Homes* did not involve claims for tortious interference; it involved a simple breach of contract claim.  Thus, Radianse's is a blunderbuss argument.  It leads to the absurd conclusion that even a claim for breach of contract does not relate to contractual liability.

Furthermore, this entire line of argument is a red herring.  The Policy does not exclude "liability under a contract"; it excludes any claim "*based upon, arising from, or in any way related to* any liability under *any* contract or agreement."  Even if Radianse's own liability is not "liability under a contract," Marcou's undoubtedly is.  Radianse does not assert otherwise.  And Radianse cannot dispute that its liability in the Underlying Action was "based upon, arising from, or in any way related to" Marcou's liability.

Radianse also attempts to escape the holding of this court in *GE HFS Holdings, Inc. v. National Union Fire Ins. Co. of Pittsburgh, PA*, 520 F. Supp. 2d 213 (D. Mass. 2007).  Radianse states that the claim against Ingoldsby in *GE HFS* was for "negligent conduct for breach of contractual duties."  *See* Radianse Motion, at 9.  This is wrong.  The claim was for negligent supervision.  *See* 520 F. Supp. 2d at 228.[3]

---

[3] The claim was actually titled "Negligent Misrepresentations," but the court assumed for its discussion that, as Ingoldsby argued, the claim was really one for "negligent supervision."  *See* 520 F. Supp. 2d at 228.

Radianse makes several other statements about the *GE HFS* case, however, that are correct and which demonstrate that the holding in *GE HFS* strongly supports Twin City's denial of coverage.  Radianse acknowledges that Ingoldsby was not a party to the contract.  Radianse Motion, at 9.  Radianse says that while the claim against Ingoldsby sounded in tort, the duty underlying the claim flowed from a contract.  *Id.*, at 9-10.  Radianse emphasizes that according to Heller, Ingoldsby owed Heller a duty to ensure that the certificates required "under the Loan Agreement" were accurate.  *Id.* at 10.

These facts are all perfectly analogous to this case.  Radianse was not a party to Marcou's employment contract.  However, the duty not to hire Marcou flowed entirely from Marcou's employment contract.  According to AccountAbility, Radianse knew about the contract and its non-compete provision and therefore had a duty under tort law not to induce a breach of that contract.  Radianse points out that it "had no obligations under [Marcou's] agreement with AccountAbility" and that "[a]ny obligations of Radianse arose out of tort law."  *Id.* at 10.  But the same was the case in *GE HFS*.  Ingoldsby did not personally have any obligations under MHCS' contract with Heller, but Heller asserted that Ingoldsby had a duty under tort law to see that Heller's contractual rights were not violated.

Radianse also discusses how the court in *GE HFS* distinguished other cases where the contract only "provided the context" of the tort.  But the fact is this case is far more similar to *GE HFS* than those other cases.  For example, Radianse points out that in *GE HFS*, "the contract 'provided more than context' and 'the obligation to provide information [under the contract] form[ed] the basis of Heller's claims.'"  *See* Radianse Motion, at 10-11; *GE HFS*, 520 F. Supp. 2d at 229.  But again, the same is the case here.  Marcou's obligation under her contract not to compete with AccountAbility forms the basis of AccountAbility's claims in the Underlying

Action.  True, Radianse had no obligations under the contract; but Marcou did, and under tort law, Radianse had a duty not to cause a breach of her obligations (assuming the other elements of "intentional interference with contractual relations" were met).  Again, AccountAbility's alleged right to prevent Marcou from working for its clients, and Marcou's and Radianse's liability for violation of that right, stemmed entirely and exclusively from Marcou's employment contract.  AccountAbility did not allege any independent or pre-existing "fraudulent intent" on the part of Radianse.  *See GE HFS*, 520 F. Supp 2d at 229; Radianse Motion, at 11.

## II.    "Any contract" Means Any Contract

The Policy excludes "any claim … (1) based upon, arising from, or in any way related to any liability under *any* contract or agreement . . . ." (emphasis added).  This Exclusion (unlike others, such as the one in *GE HFS*) is not limited to contracts to which an insured is a party.  The Exclusion says, "any contract," and this means any contract.  *See Carolina Cas. Ins. Co. v. Sowell*, 603 F. Supp. 2d 914, 931 (N.D. Tex. 2009) (holding that an exclusion for claims arising from "any" contract "cannot be reasonably read … to apply only to claims involving a contract to which [an insured] was a party").

Radianse argues that this conflicts with its "reasonable expectations."  It complains that a straightforward application of the unambiguous language would "restrict[] the insured's rights based on obligations it did not voluntarily assume, and where the insured may not have even known the contract existed."  Radianse Motion, at 11.  Radianse's complaints are misdirected.  These are reasons why Radianse would not be liable in the underlying case.  If Radianse had no knowledge of Marcou's employment contract, the elements of "intentional interference with contractual relations" would not be met and it would have no liability.  According to the

Underlying Complaint, Radianse induced the breach of a contract it well knew existed.  *See Twin City Motion*, at 9.

Furthermore, Radianse cannot re-write the insurance contract by citing "reasonable expectations" in the face of an unambiguous exclusion.  The insured's "reasonable expectations" generally only come into play "when the task is to interpret an ambiguous provision."  *See Aguiar v. Generali Assicurazioni Ins. Co.*, 47 Mass. App. Ct. 687, 691 (1999).  Put another way, Defendants could not reasonably have expected to be covered when the *express terms* of the policy *exclude* coverage.  *See id.* at 690-91 (holding that insured could not have "reasonable expectation" of coverage in the face of an unambiguous exclusion); *Spencer Press, Inc. v. Utica Mut. Ins. Co.*, 42 Mass. App. Ct. 631, 635 (1997) (holding that insured's claimed "reasonable expectations" do not alter the fact that no reasonable policyholder would expect coverage "from the language of the policy").  *See also Board of Regents of the Univ. of Minn. v. Royal Ins. Co. of Am.*, 517 N.W.2d 888, 891 (Minn. 1994) ("The reasonable expectation test is not a license . . . to rewrite the exclusion solely to conform to a result that the insured might prefer.").

### III.    The Exclusion's Carve Back Does Not Apply

Radianse also argues that the last clause of the Exclusion applies, because even if Marcou's contract did not exist, Radianse would have liability for "interference with business relations" or misappropriation of trade secrets.  *See* Radianse Motion, at 12.  This argument is another red herring.  Without Marcou's contract and its alleged non-compete provision, there would be nothing left in the Underlying Complaint to support any claim at all.

If Diane Marcou had no employment contract, or if her contract lacked any non-compete provision, she would have been an ordinary, terminable-at-will employee.  She would have been free to quit as she pleased and then to work for whomever she chose.  And Radianse would have

incurred no liability for simply hiring her.  Massachusetts law holds that "at-will employees should be allowed to change employers freely and competition should be encouraged." *Augat, Inc. v. Aegis, Inc.*, 409 Mass. 165, 172 (1991).  "If an employer wishes to restrict the post-employment competitive activities of a key employee, it may seek that goal through a non-competition agreement." *Id.  See also BBF, Inc. v. Germanium Power Devices Corp.*, 13 Mass. App. Ct. 166, 173 (1982) ("[A]n employer, at least in the absence of the use of 'wrongful means,' ordinarily may hire such an employee (at will) of another employer without becoming subject to liability to the earlier employer.").  As the Restatement explains:

> If the third person is free to terminate his contractual relation with the plaintiff when he chooses, there is still a subsisting contract relation; but any interference with it that induces its termination is primarily an interference with the future relation between the parties, and the plaintiff has no legal assurance of them. As for the future hopes he has no legal right but only an expectancy; and when the contract is terminated by the choice of the third person there is no breach of it. …
>
> An employment contract, however, may be only partially terminable at will. Thus it may leave the employment at the employee's option but provide that he is under a continuing obligation not to engage in competition with his former employer. Under these circumstances a defendant engaged in the same business might induce the employee to quit his job, but he would not be justified in engaging the employee to work for him in an activity that would mean violation of the contract not to compete.

Restatement (Second) Torts § 768, comment i.

Thus, the existence of a contractual restriction is pivotal in this case.  Where there is no contractual provision restricting an employee's post-termination activities, there is no liability if the employee simply exercises her right to work somewhere else.  Without a contractual restriction, there can only be liability if the new employer uses some "wrongful means" to violate the existing employer's known "expectancy" of a continued relationship by inducing the termination.  The case of *Swanset Dev. Corp. v. City of Taunton*, 423 Mass. 390 (1996), cited by Radianse, is completely inapposite to the facts alleged by AccountAbility in the Underlying Action.  In *Swanset* the plaintiff developer brought suit under the Massachusetts Civil Rights

Act, arguing that the defendants interfered with both his contractual relations (three signed leases) and his future business relations.   The plaintiff recited a litany of alleged wrongful conduct by a number of defendants, including the Mayor and municipal counsel of Taunton, who allegedly acted in concert to deny the plaintiff a needed special use permit. *See id.* at 396- 397.[4]

In the Underlying Action AccountAbility asserted only a claim for interference with an existing contract, not for interference with a prospective contract.   Every allegation in the Underlying Complaint is founded on the fact that Marcou was contractually prohibited from working for Radianse.[5]   The Underlying Complaint *never even suggests* any other basis for its contention that Marcou's employment with Radianse was improper.   AccountAbility alleged that Radianse's conduct was improper only because Radianse knew of Marcou's non-compete agreement and induced a breach of that agreement, anyway.   Asserting any claim without the contract would have required pleading an entirely new set of allegations.   Only facts "within the range of the allegations in the complaint" give rise to a duty to defend, not the theoretical allegations of a theoretical complaint. *See Sterilite Corp. v. Continental Cas. Co.*, 17 Mass. App. Ct. 316, 318 (1983).   "[O]therwise, an insurer's duty to defend could arise in a virtually endless number of situations, constrained only by the imagination of the insured, regardless of what is, in

---

[4] Further, when the court in *Swanset* referred to interference with "business relations," it was referring to "intentional interference with prospective contractual relations" under Restatement (Second) Torts § 766B, as opposed to intentional interference with an existing contract under §766. *See United Truck Leasing Corp. v. Geltman*, 406 Mass. 811 (Mass. 1990) (cited by *Swanset*, discussing "what elements a plaintiff must prove in order to present a jury question (1) on a claim of intentional interference with a contract and (2) on a claim of intentional interference with a prospective contractual relation.").

[5] As explained in Twin City's Motion, the basis for AccountAbility's claim against Radianse was laid out in Count IV of the Underlying Complaint. *See* Ex. A, at ¶¶ 56-62.  To review, Count IV alleged the following: that the Consulting Agreement between AccountAbility and Marcou constituted a "binding contract" (¶57); that Radianse had "actual notice" of that contract (¶58); that Radianse "knowingly and willfully interfered with AccountAbility's contractual relations with Marcou" by employing her (¶59); that Marcou accepted employment with Radianse "in violation of the non-solicitation provisions of her Agreement with AccountAbility" as a direct result of Radianse's "knowing and willful interference" (¶60); that Radianse's interference with Marcou's contractual performance was "improper in motive or means" (¶61); and that as a result, AccountAbility suffered damages (¶62).

fact, alleged in the underlying complaint." *Schilberg Integrated Metals Corp. v. Continental Cas. Co.*, 819 A.2d 773, 788 (Conn. 2003).

Moreover, AccountAbility not only *omitted* any allegations supporting a claim for intentional interference with prospective contract or "business relations"; it *could not* have asserted such a claim under the facts alleged. According to the Underlying Complaint, Marcou independently decided to resign from AccountAbility when negotiations over her salary failed. *See* Twin City Motion, Ex. A, at ¶15. It was only *after* Marcou quit AccountAbility that she allegedly solicited employment with Radianse. *See id.*, at ¶¶ 20 *et seq*. At that point, AccountAbility had no legal right or even expectancy that could be violated, *other than* the non-compete provision in Marcou's employment contract. Without that provision, there could not possibly have been any liability. *See Ryan, Elliott and Co., Inc. v. Leggat, McCall & Werner, Inc.*, 8 Mass. App. Ct. 686, 693 (1979) (holding that defense verdict was proper where employee had "already decided to leave" the plaintiff's company before defendant offered him employment). Put another way, Radianse was not alleged to have induced Marcou to *leave AccountAbility*; it was only alleged to have induced Marcou to *work for Radianse*, after Marcou had already quit on her own.

Radianse also attempts to pin a duty to defend on a claim for misappropriation of trade secrets. This attempt must fail for several reasons. First, the Underlying Complaint does not actually contain a claim for misappropriation of trade secrets or allege that Radianse actually misappropriated any specific information. Rather, it merely speculates that Marcou is likely to commit such a misappropriation and seeks an injunction to prevent this from happening in the future. *See* Twin City Motion, Ex. A, at ¶34. Second, any claim for misappropriation of trade secrets would *also* have arisen from Marcou's employment contract, which prohibited such

misappropriation and circumscribed her obligations. *See id.*, at ¶¶ 11-13.   Third, any misappropriation claim would not be covered under the Policy, even without Marcou's contract. The Policy expressly excludes "any claim … based upon, arising from, or in any way related to infringement of … trade secrets, or other intellectual property." *See* Twin City Motion, Ex. E, at §V.A.(5).

## IV.   Twin City's Reading Does Not Render Any Language "Superfluous"

Radianse also argues that Twin City's reading renders various words "superfluous." First, Radianse argues that Twin City ignores the words "liability under any." *See* Radianse Motion, at 13.   Twin City does no such thing.   As explained above, AccountAbility's asserted right to prevent Marcou from working for its clients was derived exclusively from Marcou's contract, and therefore liability for violating that right was "liability under any contract."   Even if Radianse is correct that its own liability was not "under" a contract, Marcou's liability certainly was, and Radianse's liability clearly was "related to" her liability.

In perhaps its strangest and most confusing argument, Radianse also states that a "reasonable interpretation of the contract requires circumstances in which the exclusion would not apply, but where liability would not 'have been incurred in the absence of [the] contract.'" *See* Radianse Motion, at 13.   "Otherwise," says Radianse, "the first half of the Exclusion would be surplusage." *Id.*   This makes absolutely no sense.   Without the first half of the Exclusion, *nothing at all would be excluded*.   There is simply nothing in the Policy or in logic requiring that the "circumstances" formulated by Radianse exist.

The parties to the insurance contract intended to exclude any claims arising from or in any way related to contractual liability, but sought to leave intact the tort and statutory claims that would exist in the absence of any contractual liability and are otherwise covered under D&O

policies – for example, securities fraud or derivative claims.  The language of the Exclusion as written represents a perfectly efficient and clear way of effecting this intent, and Radianse has offered no alternative formulation with the same effect and with less "surplusage."  If Radianse nonetheless demands an example of a claim that is covered even without the Exclusion's carve back, most securities fraud claims would fit the bill.  Claims for securities fraud (*e.g.*, under §10(b) the Securities Exchange Act of 1934) are derived from statute and generally do not arise from any contractual liability.  AccountAbility's claims, on the other hand, are derived entirely from its rights under Diane Marcou's employment contract and her liability thereunder.

In any case, there is no need to play Radianse's game of hypotheticals.  The language of the Policy is unambiguous and clearly excludes coverage in this case, regardless of any theoretical scenarios that Radianse or Twin City may construct.  Therefore, Twin City's denial of coverage was proper and in good faith, and Radianse's Motion should be denied.

## CONCLUSION

For the reasons set forth above and in Twin City's Motion for Summary Judgment, Radianse's Motion for Partial Summary Judgment should be denied and Twin City's Motion for Summary Judgment should be granted.

Dated:  September 10, 2010        Respectfully submitted,

TWIN CITY FIRE INSURANCE COMPANY

By its attorneys,

/s/ Craig E. Stewart
Craig E. Stewart (BBO # 480440)
Jonathan Toren (BBO # 674779)
Edwards Angell Palmer & Dodge, LLP
111 Huntington Avenue
Boston, MA 02199-7613
Tel.:  (617) 239-0764
Fax:  (617) 227-4420

**CERTIFICATE OF SERVICE**

I, Craig E. Stewart, hereby certify that a true and accurate copy of the foregoing document has been filed and served through the Court's electronic filing system this 10th day of September, 2010.

/s/ Craig E. Stewart_____