UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| RADIANSE, INC., <br><br> Plaintiff, <br><br> v. <br><br> TWIN CITY FIRE INSURANCE COMPANY <br><br> Defendant. | Civil Action No. 10-10120-RGS <br><br> **LEAVE TO FILE GRANTED ON SEPTEMBER 24, 2010** |

**REPLY OF PLAINTIFF RADIANSE, INC.
TO TWIN CITY FIRE INSURANCE COMPANY'S OPPOSITION TO
ITS MOTION FOR SUMMARY JUDGMENT**

Plaintiff Radianse, Inc. ("Radianse") submits this brief reply memorandum in support of its Motion for Summary Judgment (ECF No. 23) in order to respond to misstatements of law and an erroneous interpretation of Exclusion V(A)(1) (the "Exclusion") advanced by Plaintiff Twin City Fire Insurance Company ("Twin City") in its in opposition to the Radianse Motion for Summary Judgment (ECF No. 31).

 **A.** **The Radianse Interpretation of the Exclusion is not Unreasonable; it is Consistent with Twin City's Initial Interpretation**

After being confronted with the Radianse criticism of its interpretation of the Exclusion, Twin City has changed its reading of this critical provision of the policy in issue. In 2008, when the Radianse claim was denied, Twin City stated that the Exclusion "excludes coverage for any liability based upon . . . any contract," *see* ECF No. 26, Exhibit D at 7 (ellipses in original), contending that coverage was denied because any liability of *Radianse* was based upon a contract. Now, realizing that liability of Radianse was not based upon contract, Twin City argues that the Exclusion excludes coverage for liability related to *anyone's* liability under a

- 1 -

contract. *See* ECF No. 31 at 3. Twin City now unreasonably dismisses the interpretation offered by Radianse (that the liability of Radianse that must be under a contract), when this was the basis for the original denial of coverage. Twin City once thought this interpretation was reasonable and it cannot change its interpretation at this late date.

      **B.**    <u>**Twin City Cannot Deny that Interference with a Contract is Interference with a Property Right**</u>

Although it attempts to avoid the issue, Twin City cannot deny that, under black letter law, interference with a contractual relationship is interference with a property right. *See* 17A AM. JUR. 2D *Contracts* § 1 (2010) ("The right to perform a contract and to receive its profits and the right to performance by the other party are property rights entitling each party to the fulfillment of the contract by performance."); 1 WILLISTON ON CONTRACTS, § 1.1 (4d ed. 2007) ("Enforceable contracts are deemed to be property rights."). Twin City attempts to skirt the issue by arguing that the case cited by Radianse for this basic proposition, *United States v. Roxse Homes, Inc.*, 1993 WL 100102 (D. Mass. March 29, 1993), did not involve tortious interference and is therefore inapplicable. This position is misconceived. A court need not hear an interference claim to make an accurate, basic statement regarding the essence of a contract right as a property interest.

Because the right to enforce a contract right is a property right, a claim for interference with a contract is a claim for interference with a property right. *See United Kosher Butchers Ass'n v. Associated Synagogues of Greater Boston, Inc.*, 349 Mass. 595, 600 (1965) ("The benefits attaching to a contract or to an advantageous business relationship are recognized as property rights and any unjustified interference with their enjoyment is actionable."); 44B AM. JUR. 2D *Interference* § 37 (2010) ("A party may sue for tortious interference with contract because the right to performance of a contract and the right to reap profits therefrom are property

rights that are entitled to protection in the courts."). Interference with a contract right is no more "liability under" a contract than would be a nuisance claim. *See Amaral v. Cuppels*, 64 Mass. App. Ct. 85, 90-91 (2005) ("nuisance is an interference with [the plaintiff's] use and enjoyment of [the land].") (*quoting* PROSSER & KEETON, TORTS § 88, at 622 (5th ed. 1984)). Both causes of action arise under tort law.

### C. The Contract as Interpreted by Twin City Vitiates Coverage

#### 1. It is Difficult to Imagine *Any* Case that is Not Related to Liability under Contract

Twin City attempts to distract the Court from the fact that the Exclusion, as Twin City interprets it, would reach nearly *every* claim that has *ever* come before a court. It is hard to imagine any claim that is not "related to…liability under a contract." A motor vehicle accident is related to the driver's liability under his lease; a store fire is related to liability under the contract governing the sprinkler system's installation; products liabilities claims are related to liability under the contract of sale; property torts related to liability under the contracts of sale and for provision of utilities; and employment disputes related to liability under employment contracts. Twin City's interpretation is therefore impermissible because it vitiates all coverage.

#### 2. Even the Example Twin City Offers of a "Covered" Claim, Would Not Be Covered

In an attempt to defend its overly broad reading of the Exclusion, Twin City offers a cause of action that would be covered despite the Exclusion: securities fraud. This example highlights the unreasonable nature of Twin City's interpretation, because even securities fraud actions would be excluded as involving a contract.

Just like the other claims mentioned above, an action for securities fraud will be related to a contractual liability. A security is nothing but a contract, *see* 18 U.S.C. §2311 (definition of "securities" includes "investment contracts"), and the sale and transfer of securities are mired in

contracts.  It is hard to imagine any instance of securities fraud that would not also run afoul of a contractual agreement.  *See, e.g., Kashner Davidson Securities Corp. v. Mscisz*, 2010 WL 2612743, *1 (D. Mass. June 25, 2010) (describing claim for breach of contract and related counterclaim for securities fraud); *Citibank Global Markets, Inc. v. Rodriguez Santana*, 573 F.3d 17, 22 (1st Cir. 2009) (counterclaim for breach of contract and related counterclaim for securities fraud); *Gembitsky v. DeSteph*, 2009 WL 1273770, *1 (D.N.H. May 7, 2009) (asserting claims for breach of contract and securities fraud).  As a result, under Twin City's interpretation of the Exclusion, securities fraud cases would also be related to liability under contract and not covered under the policy.[1]

If the Defendant cannot offer an example of one claim that would be covered, its coverage is by definition illusory.

### 3.       No Court in this Jurisdiction has Read an Analogous Exclusion as Broadly

Twin City misconstrue the Court's holding in *GE HFS Holdings, Inc. v. National Union Fire Ins. Co of Pittsburgh, PA*, 520 F. Supp. 2d 213 (D. Mass 2007), by incorrectly asserting that the insured in that action "did not personally have any obligations under" the contract.  ECF No. 31 at 4.  This is erroneous.  *See GE HFS*, 520 F. Supp. 2d at 230 (exclusion applied because claims fell "'within the policy's contract exclusion because [they] plainly arise[] out of [*the insured's] contractual obligation'*") (emphasis added).  The underlying complaint explicitly alleged that the insured owed duties under the contract.  *Id.* at 219 (complaint alleged insured had

---

[1] The Defendant would also seek to avoid coverage for securities fraud on other grounds.  The Defendant has already stated that it would elect not to cover all fraud based claims, all violations of statutory law, and intentional torts based on public policy rationales.  *See* ECF No. 21 at 5 n. 4, 13-14.

- 4 -

"owed duties to [the Plaintiff in the underlying action] to prepare the borrowing base certificates . . . in connection with the DIP Loan . . ., as determined under the DIP Loan Agreement.").

The claim in *GE HFS* was inextricably tied to the obligations of the contract. While the underlying claim was one for negligent supervision, there could be no claim for negligent supervision without a duty owed by the insured,[2] and this duty was born from the contract. *See GE HFS*, 520 F. Supp. 2d at 219. Without the contract, there would have been no duty and no claim for negligent supervision. In contrast, Radianse had no such duty under the contract. Instead, as Twin City concedes, it "had a duty under tort law." ECF No. 31 at 4.

### D. Without the Contract, Radianse Would Have Been Liable for Interference with Advantageous Business Relations

Twin City refuses to engage in a proper examination of the conduct underlying the AccountAbility Action. *See* ECF No. 31 at 8 (underlying complaint "asserted only a claim for interference with an existing contract, not for interference with a prospective contract" and refusing to imagine a world without the contract). This type of inquiry, however, is exactly what is required by the second clause.[3] The second clause requires the insurer to imagine a world in which the contract was not formed, and to determine whether Radianse would have faced liability for the same fundamental actions in the absence of that contract. That is, if Radianse undertook the same basic actions, but there was no contract between Ms. Marcou and AccountAbility, would there still be liability? The answer is yes.

In the absence of a contract, Radianse would still be liable for interference with business relations or interference with prospective contractual relations. *See* RESTATEMENT (SECOND) OF

---

[2] *Nelson v. Salem State College*, 446 Mass. 525, 538 (2006) (noting that duty is an element of a claim for negligent supervision).

[3] The second clause states that "this exclusion shall not apply to the extent that liability would have been incurred in the absence of such contract or agreement."

TORTS § 766 (1979) ("[T]here is a general duty not to interfere intentionally with another's reasonable business expectancies of trade with third persons, whether or not they are secured by contract.")  Specifically, Radianse would be liable for interfering with the future business relationship between Ms. Marcou and AccountAbility.  *See* 37 MASS. PRAC. § 6.2 ("Almost any relationship of economic advantage to the plaintiff is within the ambit of this tort."); RESTATEMENT (SECOND) OF TORTS § 766 (1979) ("Included are interferences with the *prospect* of obtaining employment or employees") (emphasis added).

     As described in the underlying complaint, AccountAbility sought to continue a business relationship with Ms. Marcou after her departure, wherein she would continue as an independent agent and would complete in-progress work for certain clients and transfer duties to others at AccountAbility.  *See* ECF No. 26, Exhibit B at ¶ 17 ("two AccountAbility clients . . . each separately informed AccountAbility that Marcou was completing an FAS 123R project for them, and that they needed Marcou to complete the work. AccountAbility negotiated a higher rate for Marcou with both [companies] for Marcou's services following her resignation date with AccountAbility, and approved Marcou to work with [these companies] past her resignation date of January 18, 2008."); *id.* at ¶ 21 ("AccountAbility anticipated that Marcou would bill hours on these three clients through January and possibly into February.").  This relationship, however, did not continue because Radianse allegedly interfered with the business relationship between Ms. Marcou and AccountAbility, and retained Ms. Marcou as a full time employee.  *See id.* at ¶ 20, 22.  It is this business relationship with which AccountAbility could have alleged Radianse interfered.

For the foregoing reasons, Radianse respectfully requests that the Court grant its motion for partial summary judgment that, as to Counts I and II, Twin City is liable for the breach of its duty to defend and its duty to indemnify Radianse in connection with the AccountAbility Action.

Respectfully submitted,
RADIANSE, INC.
By its attorneys,

*/s/ Jack R. Pirozzolo*
Jack R. Pirozzolo (BBO No. 400400)
Catherine C. Deneke (BBO No. 673871)
Foley Hoag LLP
Seaport World Trade Center West
155 Seaport Boulevard
Boston, Massachusetts 02210-2600
Telephone:  617 832 1000
Facsimile:  617 832 7000
jpirozzolo@foleyhoag.com

Dated: September 24, 2010

**Certificate of Service**

I, Jack R. Pirozzolo, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

*/s/ Jack R. Pirozzolo*
Jack R. Pirozzolo