UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

RADIANSE, INC.,

Plaintiff,

v.

TWIN CITY FIRE INSURANCE COMPANY,

Defendant.

CIVIL ACTION NO. 10-10120-RGS

LEAVE TO FILE GRANTED ON OCTOBER 5, 2010

**TWIN CITY FIRE INSURANCE COMPANY'S REPLY
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Defendant Twin City Fire Insurance Company ("Twin City") submits this Reply Memorandum in support of its Motion for Summary Judgment.

Radianse's Opposition and Reply briefs present several new twists on the same losing arguments asserted in its initial Motion. Twin City addresses each of these points briefly below.

### I.     The Exclusion Is Unambiguous And Does Not "Vitiate Coverage"

AccountAbility sued both Marcou and Radianse to enforce its rights under Marcou's employment contract. The contract was the only possible source of these rights, as explained below and in Twin City's previous memoranda. Thus, AccountAbility's claims against Radianse plainly were "related to" "*any* liability under *any* contract or agreement."

Radianse, meanwhile, persists in its attempts to insert additional words into the exclusion. Twin City has already addressed Radianse's attempt to interpret "any contract" to mean "contracts to which Radianse is a party." *See* Twin City Opposition, at 5-6. Radianse now also argues that "any liability under any contract" refers only to Radianse's liability. *See* Radianse Opposition, at 9. In other words, Radianse would like to re-write the Policy to exclude claims

"based upon, arising from, or in any way related to "**the insured's** liability under **its** contract." But this is not what the exclusion says. The exclusion applies to "any claim … based upon, arising from, or in any way related to *any* liability under *any* contract or agreement." The words are clear and unambiguous and do not support Radianse's position.

Twin City has never changed its position in this regard. (*See*, Reply of Radianse, Inc. at 1-2).[1] Radianse has always asserted that AccountAbility's claim against Radianse was "based upon, arising from or related to any liability under any contract," *viz*. Marcou's employment contract. In his August 20, 2008 letter confirming Twin City's denial of coverage, Mr. Holby states: "Here, the Action is based entirely upon the alleged liability under ***the 2006 Agreement between AccountAbility and Ms. Marcou.***" (emphasis added) *See* ECF No. 26, Ex. D at 7. And he goes on to state, as Twin City has maintained in this lawsuit, "Your argument that 'the clear purpose of this exclusion is to preclude coverage for claims arising from the insured's liability under contracts to which it is a party' is not supported by the terms of Section V.(A)(1). Those terms are not ambiguous. Section V.(A)(1) specifically excludes coverage for any liability based upon … any contract. The terms could not be clearer." (emphasis in original) *See id.*[2]

Twin City's reading also does not, as Radianse claims, "vitiate coverage." Radianse

---

[1] In its Reply Brief, Radianse appears to confuse the cause of action which AccountAbility brought against Radianse, an action that sounds in tort, with the coverage issue of whether that action was based upon, arose out of or was in any way related to Marcou's non-compete agreement with AccountAbilty. ("Now, realizing that liability of Radianse was not based upon a contract…" (Id. at 1) ). Radianse' liability to AccountAbility was based on its allegedly tortious interference with Marcou's contract; and AccountAbility's claim against Radiance is excluded under the Policy because it plainly arises out of or is based upon Marcou's liability under that contract.

[2] In its Reply, Radianse quotes a sentence from Mr. Holby's letter containing an ellipsis to support its favorite straw man, that Twin City has ignored the words "liability under." In this sentence, Mr. Holby was emphasizing the words "any contract" in responding to Radianse's argument that the exclusion applied only to Radianse's contracts. This sentence came immediately after Mr. Holby quoted the *complete* exclusion, and immediately before he *specifically* discussed the import of the words "liability under," in response to Radianse's argument that the coverage provided was "illusory," as follows: "For the exclusion to apply, it is not sufficient for a Claim to be 'linked to' a contract; rather the exclusion only applies where a Claim arises from, is based upon or is related to liability under a contract, and then, only where the basis for such liability is the contract in question." *See* ECF No. 26, Ex. D at 7.

professes difficulty in imagining a case that is not "related to a contract." But this is a straw man. Twin City does not assert and has never asserted that any claim that is at all related to any contract in the world is excluded. There must be some liability "under" a contract that relates to the claim, as Mr. Holby explained. And further, if "liability would have been incurred in the absence of such contract," the exclusion would not apply. Notably, Radianse's exact argument was considered and rejected by this Court in *GE HFS Holdings, Inc. v. National Union Fire Ins. Co. of Pittsburgh, PA*, 520 F. Supp. 2d 213, 230 (D. Mass. 2007) ("Ingoldsby also argues that the exclusion is void as it excludes virtually all types of coverage … However, Ingoldsby cites no support for this proposition, and as the cases described above make clear, misrepresentations may occur in a business setting yet not be related to a contractual duty.").

## II.   The Holding of *GE HFS* Applies

Radianse again engages in a hair-splitting attempt to distinguish the holding of this Court in *GE HFS*. But Radianse cannot dispute that Ingoldsby was not personally a party to the contract.[3] The claim at issue there was not breach of contract, but negligent supervision. Radianse argues that "[w]hile the underlying claim was one for negligent supervision, there could be no claim for negligent supervision without a duty owed by the insured, and this duty was born from the contract." Radianse Reply, at 5. But the same is the case here. Radianse's duty not to hire Marcou was "born from" the employment contract, to the same extent that Ingoldsby's duties were "born from" the loan agreement. In both cases, the insured was not a party to the contract. In both cases, however, tort law allegedly imposed a duty not to induce a violation of the contractual obligation owed to the plaintiff. *See also Carolina Cas. Ins. Co. v. Sowell*, 603 F. Supp. 2d 914, 931 (N.D. Tex. 2009) (holding that an exclusion for claims arising

---

[3] As previously noted, there was a dispute in the underlying case over whether Ingoldsby had issued a guarantee of the loan, but that claim was not at issue in the court's discussion of the contractual liability exclusion. *See* 520 F. Supp. 2d at 228.

from "any" contract "cannot be reasonably read … to apply only to claims involving a contract to which [an insured] was a party").

*GE HFS* held that an exclusion of claims arising from contractual liability applies where a contractual obligation forms the basis of the plaintiff's claims, even when the insured is not personally obligated under the contract and the claim against him sounds in tort. That holding is sound and plainly applies here.

### III. There Was No Claim For Misappropriation of Trade Secrets, and Such a Claim Would Be Excluded, Anyway

In its Opposition, Radianse attempts to pin coverage on a claim for misappropriation of trade secrets. As Twin City explained in its Opposition (pp. 9-10), had AccountAbility asserted such a claim – which it did not – the claim would be excluded under two Policy exclusions.

First, Radianse selectively and deceptively quotes from part of a sentence in Paragraph 34 of the underlying Complaint. In full, that sentence reads: "Moreover, it is not reasonably possible for Marcou to avoid misappropriating a substantial amount of the Company's confidential and proprietary information, and customer goodwill that Marcou had access to during her employment at AccountAbility, *in violation of the confidentiality and non-disclosure provisions set forth in Section 7 of the Agreement*." (emphasis added). Thus, the contractual liability exclusion would apply to this claim as well, had AccountAbility actually asserted it.

Second, the Policy specifically excludes any claim "based upon, arising from, or in any way related to infringement of … trade secrets, or other intellectual property." § V.(A)(5). This exclusion would plainly apply, as well.

### IV. There Was No Potential Claim For Intentional Interference With Prospective Contract

As Twin City explained in its own Opposition brief, AccountAbility did not and could not have asserted any claim for intentional interference with a *prospective* contract. The only allegation of wrongful conduct in AccountAbility's complaint concerned Marcou's alleged breach of her non-compete agreement. Without her contract, Marcou would have been a terminable-at-will employee and would have been free to work for whomever she chose. AccountAbility would have had no claim. *See* Twin City Opposition, at pp. 6-9.

In its Reply, Radianse argues that AccountAbility still had an expectation that Marcou would continue work with certain clients as an independent agent. However, the only reason AccountAbility had such an expectation is **because of the non-compete provision**. Again, without that provision, Marcou would have been free to work for whomever she chose. AccountAbility was able to insist that Marcou work through it and at a higher rate – or not at all – solely because of the non-compete provision. *See* Underlying Complaint, ¶24 ("Ms. Lopolito sent Dr. Lowenhaupt a letter stating that Radianse could continue to receive Marcou's services, but that it would need to be at an increased rate and through AccountAbility, ***as Marcou 'was under a noncompete agreement with AccountAbility***.'") (emphasis added). Again, the facts clearly show that without the contract's non-compete provision and the existence of liability thereunder, AccountAbility would have had no claim.

### V. A Contractual Right is Contractual

Radianse also repeats the puzzling *non sequitur* that interference with a contract is interference with a property right. Twin City does not dispute that courts have conceived of the claim in this manner. That a contractual right can be considered "property" does not alter the fact that it is *also* a contractual right, one that by definition is based upon, arises from or is

related to a contract. Radianse's attempts to convince this Court that a contractual right is not contractual and therefore cannot trigger the Exclusion must fail.

### VI.  Radianse Has No Claim For Bad Faith

As explained in Twin City's Motion (pp. 15-16), it is well-established under Massachusetts law that where there is no coverage, there can be no bad faith. *See, e.g., Transamerica Ins. Co. v. KMS Patriots, L.P.*, 52 Mass. App. Ct. 189, 197 (2001). Radianse cites no case to the contrary. Instead, Radianse argues that Twin City received notice of Radianse's claim for coverage on April 17, 2008, and that it denied coverage on May 30, 2008, and that this less than two month delay was "unreasonable." Radianse Opposition, at 5. Radianse claims that this delay "creates an inference" that Twin City's interpretation of the Exclusion was not in good faith.[4] *Id.*, at 13-14. Radiance argues therefore that even if this Court determines that the Exclusion is applicable, that finding would "not automatically support a finding that Twin City acted *in good faith*." *Id.* 13. (emphasis added). Nowhere, however, does Radianse point to any conduct by Twin City that could even begin to satisfy its burden to establish a claim for *bad faith*.

In opposition to Twin City's motion for summary judgment, Radianse submits only the vague, conclusory allegations of Diane Marcou that "[h]ad we known one way or the other whether the claim was denied, we could have and, I think, we would have made different decisions in handling the case." Marcou Aff. ¶4. Neither Radianse nor Marcou specifies what these decisions would have been or what possible effect any earlier knowledge of Twin City's proper denial of coverage (let alone confirmation of its unequivocal May 30 denial of coverage)

---

[4] Radianse also complains that, over a month after it received Twin City's denial of coverage, it sent Twin City a letter dated July 8, 2008, requesting reconsideration of its denial, that Twin City did not respond until August 20, 2008, and that this delay had an unspecified "negative impact" on Radianse's ability to conduct and defend the action which was being defended by its counsel in this action.

could have had on the defense.

Unable to show how the alleged delay of less than two months from time of notice to time of response caused it damage, or could possibly amount to bad faith, Radianse says it needs discovery in order to "investigate the reasons behind the delay." No discovery from Twin City, however, will help Radianse overcome its inability to explain how it was damaged by the delay, nor is Radianse entitled to a fishing expedition to see if it can discover any other basis for a claim that so obviously lacks merit that it should not have been brought in the first place.

Accordingly, summary judgment should be granted on Radianse's bad faith claims. *See Doe v. Liberty Mut. Ins. Co.*, 423 Mass. 366, 372 (1996) (granting summary judgment to insurer where the insured had shown no prejudice to it or bad faith by the insurer associated with insurer's **six month** delay in responding to notice letter); *Ingram v. Brink's, Inc.*, 414 F.3d 222, 228-29 (1st Cir. 2005) ("[S]ummary judgment cannot be defeated by relying on improbable inferences, conclusory allegations, or rank speculation.").

## CONCLUSION

Taking a step back, according to the Underlying Complaint, AccountAbility had a contractual right to insist that Diane Marcou not work for its customers for two years after her employment terminated. AccountAbility warned Radianse that this provision existed. Radianse disregarded this warning and hired Marcou, anyway. AccountAbility therefore sued Marcou for breach of contract and Radianse for inducing that breach.

The Policy, meanwhile, excludes any claim "based upon, arising from, or in any way related to liability under any contract or agreement." Reading the entire exclusion according to its plain meaning, it clearly applies to the Underlying Complaint. To obtain coverage it did not purchase for liability it intentionally incurred, Radianse seeks to inject words that are absent

from the Exclusion, claims that "any contract or agreement" does not mean what it says, and raises irrelevant hypotheticals. The Court should ignore these distractions and grant Twin City's Motion for Summary Judgment.

Dated:  October 5, 2010

Respectfully submitted,

TWIN CITY FIRE INSURANCE COMPANY

By its attorneys,

/s/ Craig E. Stewart
Craig E. Stewart (BBO # 480440)
Jonathan Toren (BBO # 674779)
Edwards Angell Palmer & Dodge, LLP
111 Huntington Avenue
Boston, MA 02199-7613
Tel.:  (617) 239-0764
Fax:  (617) 227-4420

**CERTIFICATE OF SERVICE**

I, Jonathan Toren, hereby certify that a true and accurate copy of the foregoing document has been filed and served through the Court's electronic filing system this 5th day of October, 2010.

/s/ Jonathan Toren